AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA Thomas M. Zaleski)　　　　　　　　　　17-61

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Quran Leverette | ) | Case No. 17-776 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___May 30, 2017___ in the county of ___Philadelphia___ in the ___Eastern___ District of ___Pennsylvania___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 922(a)(1)(A), 924(a)(1)(D), and 922(g)(1) | See Attachment "A." |

FILED

JUN 0 8 2017

KATE BARKMAN, Clerk
By _____ Dep. Clerk

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert Wescoe, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___06/08/2017___

_____
*Judge's signature*

City and state: ___Philadelphia, Pennsylvania___   JACOB P. HART, U.S. Magistrate Judge
*Printed name and title*

Attachment "A"

## COUNT ONE

From on or about November 22, 2016 through on or about May 30, 2017, in Philadelphia, in the Eastern District of Pennsylvania, defendant QURAN LEVERETTE willfully engaged in the business of dealing in firearms, by selling to another person firearms including a Taurus Model TCP PT 738, .380 caliber semiautomatic pistol, serial number 26379F, without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code, in violation of in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

## COUNT TWO

On or about May 30, 2017, in Philadelphia, in the Eastern District of Pennsylvania, defendant QURAN LEVERETTE, having been convicted in a court of the Commonwealth of Pennsylvania, of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate and foreign commerce a firearm, that is, a Taurus Model TCP PT 738, .380 caliber semiautomatic pistol, serial number 26379F, in violation of Title 18 United States Code, Section 922(g)(1).

## Affidavit in Support of Criminal Complaint

1. I, Robert J. Wescoe, being duly sworn, hereby depose and say the following:

2. I am a Special Agent of the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been an ATF Special Agent in Philadelphia, Pennsylvania for 28 years, including assignments to the Philadelphia Firearms Trafficking Task Force, the Philadelphia Violent Crime Impact Team, and the Philadelphia High Intensity Drug Trafficking Area Task Force, among other assignments. I have conducted or participated in hundreds of investigations relating to violations of the federal firearms and narcotics laws. These investigations involved individuals and groups and primarily focused on firearms and narcotics trafficking, the illegal possession and sale of firearms, violent crimes, drug gangs and drug trafficking organizations. I am currently a Special Agent assigned to Philadelphia Group VII, which is a Firearms Enforcement Group whose primary responsibilities include investigating individuals or groups who commit violations of federal firearms laws in Philadelphia, Pennsylvania.

3. During my tenure as an ATF Agent while conducting and participating in these investigations, I have gained a detailed knowledge of the day-to-day workings of investigations and the use of various investigative techniques. In furtherance of ongoing investigations, I have utilized various methods of surveillance, and have conducted and participated in numerous surveillance operations. I have cultivated and used reliable confidential informants ("CI") to gather information. I have arranged and directed the controlled undercover purchases of firearms and narcotics evidence. I have conducted hundreds of interviews. I have employed these various investigation techniques to gather evidence, and obtain search and arrest warrants involving violations of federal firearms and narcotics laws.

4. The information set forth below is from my personal knowledge, experience, observations, and discussions with Philadelphia Police Officers, ATF agents and Task Force Officers, and a confidential informant, and from government, court, and law enforcement records.

5. This affidavit is provided in support of a Criminal Complaint and Arrest Warrant charging QURAN LEVERETTE with dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1). Section 922(a)(1)(A) provides that it shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

6. As used in Section 922(a)(1)(A), "engaged in the business" means: "[a]s applied to a dealer in firearms, . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms...." 18 U.S.C. § 921(a)(21)(C). And the phrase "with the principal objective of livelihood and profit" means "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood

1

and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." 18 U.S.C. § 921(a)(22).

7. This affidavit does not include every fact known to me concerning the investigation, and instead contains only those facts that I believe establish probable cause to support the issuance of an arrest warrant.

8. I am currently conducting an investigation involving suspected violations of the federal firearms laws including the illegal acquisition of firearms via straw purchases, possession of firearms by a convicted felon, and the unlicensed dealing in firearms.

9. I am conducting this investigation with Philadelphia Police Officer Richard Gramlich and other sworn law enforcement officers assigned to the Philadelphia Police Department IDIS/HIDTA unit (Intensive Drug Investigation Squad/High Intensity Drug Trafficking Area). Police Officer Gramlich has over 25 years of experience and employment with the Philadelphia Police Department.

10. As set forth in this affidavit, electronically recorded and surveilled meetings occurred during which the target of this investigation possessed and sold firearms to an Undercover Officer ("UC-1") and a confidential informant ("CI"). A second Undercover Officer ("UC-2") also participated in this investigation.

11. In or about August of 2016, P/O Gramlich received information from a proven credible and reliable CI regarding a person who was distributing high-grade marijuana in Philadelphia, PA. Investigators identified this person and between August of 2016 and February of 2017, UC-1 purchased a total of approximately one pound of marijuana and one handgun from him/her. This person also put UC-1 and the CI in contact with a male identified as "Quan" at cell phone number 215-251-8315, who this person identified as his/her source of firearms.

12. "Quan" was subsequently identified as Quran LEVERETTE, black male, date of birth 07/03/1979, address of 2045 N. 7th Street, Philadelphia, PA. LEVERETTE is a convicted felon with two prior Robbery convictions in Philadelphia County, PA. LEVERETTE is not a licensed importer, manufacturer, or dealer of firearms.

13. On or about November 22, 2016, LEVERETTE called the CI via cell phone from number 215-251-8315, and arranged a meeting regarding the sale of firearms.

14. At approximately 10:35 AM, UC-1 and the CI met LEVERETTE in Philadelphia, PA. During a surveilled and electronically recorded meeting, LEVERETTE offered to acquire firearms for UC-1 at a local gun store via the use of a straw purchaser. LEVERTTE explained that he would acquire guns from the gun store using a straw purchaser and then sell them to UC-1. In an apparent reference to where he lived, LEVERETTE said the following: "I'm down seventh and diamond, 2045 to be exact." I believe LEVERETTE meant that he lives at 2045 N. 7th Street, which is located on 7th Street just south of Diamond Street. This meeting was successfully captured with audio recording.

2

15. LEVERETTE instructed UC-1 and the CI to wait while he went and picked up the straw purchaser. LEVERETTE departed driving a vehicle registered in his name, without surveillance. UC-1 and CI waited as instructed.

16. At approximately 11:00 AM, LEVERETTE contacted the CI via cell phone and instructed UC-1 and the CI to meet him near Mike & Kate's Sport Shoppe, a federally licensed firearms dealer ("FFL") located at 7492 Oxford Avenue, Philadelphia, PA.

17. UC-1 and the CI went to the vicinity of Mike & Kates FFL in a vehicle fitted with functioning audio and video recording equipment ("UC vehicle'). UC-1 parked and waited with the CI.

18. At approximately 11:40 AM, LEVERETTE arrived at the vicinity of Mike & Kate's FFL driving his vehicle vehicle as before, now with a black male passenger whom investigators have identified as a suspected straw purchaser. LEVERETTE parked his vehicle near to the UC vehicle. LEVERETTE exited his vehicle and got into the UC vehicle. LEVERETTE talked to UC-1 about previously using straw purchasers to obtain firearms at Mike & Kates FFL. LEVERETTE, UC-1 and CI discussed types and cost of firearms for sale at Mike & Kates FFL. UC-1 handed LEVERETTE $900 cash (ATF funds) for the purchase of two handguns. This meeting was successfully captured with an audio and video recording.

19. LEVERETTE exited the UC vehicle, walked to his vehicle, and got into the driver's seat. A short time later, LEVERETTE'S male passenger, believed to be the straw purchaser, exited LEVERETTE'S vehicle and walked into Mike & Kates FFL. LEVERETTE remained in his vehicle. UC-1 and the CI waited in the UC vehicle. As used in LEVERETTE's scheme, straw purchasers are person who are not prohibited from purchasing firearms and who buy a firearm or firearms for the illegal firearms dealer by falsely certifying, on records required by law to be kept in the records of federally licensed firearms dealers, that the straw purchaser, not the dealer, is the actual buyer of the firearm or firearms. Straw purchasing is also known as "lying and buying" in violation of 18 U.S.C. § 924(a)(1)(A).

20. Approximately forty minutes later, the straw purchaser exited Mike & Kates FFL carrying only paperwork, and returned to LEVERETTE'S vehicle. LEVERETTE contacted UC-1 and the CI via cell phone and, sounding agitated and surprised, explained that the straw purchaser failed the background check and did not purchase the two handguns. LEVERETTE told UC-1 to meet him around the corner in order to discuss the situation further.

21. UC-1 and LEVERETTE met a short distance from Mike & Kates FFL. LEVERETTE got into the UC vehicle and apologized to UC-1 for the failed attempt and stated that he did not have another straw purchaser who could come to the gun store today on short notice. LEVERETTE stated that he has a female that he can use to straw purchase guns at another gun store, whom he has used in the past to straw purchase guns. LEVERETTE stated that he cannot go into the gun store because he has a felony and assured UC-1 that he will get him something, meaning firearms. LEVERETTE talked about how he obtains firearms from out of state. LEVERETTE also returned $770 cash (ATF funds) and explained that Mike & Kates kept $130 of the money. Investigators confirmed that the suspected straw purchaser failed the background check and

that Mike and Kates FFL kept $130 of the ATF funds as standard fees related to the attempted transaction.

22. On December 21, 2016, UC-1 called LEVERETTE via cell phone. LEVERETTE stated that he was going out of town in order to obtain firearms and would contact UC-1 when he returned.

23. On March 7, 2017, at approximately 4:50 PM, officers established surveillance of 2045 N. 7th Street, Philadelphia, PA after LEVERETTE called the CI via cell phone and offered to sell a firearm. (This conversation was not captured with an audio recording.)

24. At approximately 6:35 PM, officers observed LEVERETTE exit the front door of 2045 N. 7th Street carrying a brown paper bag. LEVERETTE contacted UC-1 and CI via cell phone and told them to meet him at 7th and Norris Streets. Officers observed LEVERETTE walk to 7th and Norris Streets where he met with UC-1.

25. UC-1 observed two boxed new condition handguns in the brown paper bag. LEVERETTE sold one of the two handguns to UC-1 for $1,000 in cash (PPD funds). LEVERETTE walked back to 2045 N. 7th Street and entered, in possession of the brown paper bag containing one handgun. UC-1 and the CI departed the area while officers maintained surveillance of 2045 N. 7th Street.

26. At approximately 6:57 PM, the CI contacted LEVERETTE via cell phone and he agreed to sell the second handgun to UC-1 this same evening.

27. At approximately 7:23 PM, UC-1 returned to 7th and Norris Streets.

28. At approximately 7:36 PM, officers observed LEVERETTE exit the front door of 2045 N. 7th Street carrying the same brown paper bag. Officers observed LEVERETTE walk to 7th and Norris Streets where he met UC-1. LEVERETTE sold the second handgun to UC-1 for another $1,000 in cash (PPD funds). LEVERETTE then walked back to 2045 N. 7th Street and entered. (This meeting was not recorded.)

29. The two handguns purchased from LEVERETTE on March 7, 2017 were both Taurus, Model PT111 Millennium G2, nine-millimeter caliber semi-automatic pistols, serial numbers TKN80450 and TKN79870.

30. Investigators traced both Taurus pistols, serial numbers TKN80450 and TKN79870, to recently conducted retail transactions at the same FFL in Philadelphia, PA. A male herein identified as Buyer #1 purchased the Taurus pistol assigned serial number TKN80450 on March 5, 2017, only two days prior to the transaction between LEVERETTE and UC-1. A female herein identified as Buyer #2 purchased the Taurus pistol assigned serial number TKN79870 on March 4, 2017, only three days prior to the transaction between LEVERETTE and UC-1. The retail cost of each Taurus pistol that UC-1 purchased from LEVERETTE for $1,000 in government funds was $455.92, meaning LEVERETTE made a total profit of $1,088.16 or $544.08 per gun sold. Investigators identified Buyer #1 and Buyer #2 whom they suspect of being straw purchasers for LEVERETTE.

31. On March 28, 2017, LEVERETTE sent a text message to the CI via cell phone indicating that he had another firearm for sale. Investigators confirmed the text message and that it originated from cell phone number 215-251-8315, the same cell phone number LEVERETTE used during the course of this investigation.

32. At approximately 5:30 PM, agents and officers established surveillance of 2045 N. 7th Street, Philadelphia, PA.

33. At approximately 5:50 PM, LEVERETTE contacted the CI via cell phone while UC-2 and the CI were in a vehicle fitted with functioning audio and video recording equipment. LEVERETTE told the CI and UC-2 to meet him at 7th and Norris Streets.

34. At approximately 5:56 PM, agents and officers observed LEVERETTE exit the front door of 2045 N. 7th Street carrying a brown paper bag. LEVERETTE got into the driver's seat of a gray Nissan and drove away. A short time later, LEVERETTE contacted the CI via cell phone. LEVERETTE told the CI and UC-2 to meet him at the corner of Franklin Street and Montgomery Avenue.

35. At approximately 6:02 PM, LEVERETTE arrived at the corner of Franklin Street and Montgomery Avenue driving the gray Nissan and parked near the UC vehicle. LEVERETTE contacted the CI via cell phone and told the CI to come to his vehicle. The CI exited the UC vehicle and got into the Nissan with LEVERETTE. The CI purchased a new condition handgun from LEVERETTE for $1,000 in cash (ATF funds), and returned to the UC vehicle. After the transaction, LEVERETTE drove away without surveillance. The meeting was not captured with audio and video recordings.

36. At approximately 6:22 PM, agents and officers observed LEVERETTE enter 2045 N. 7th Street.

37. The handgun purchased from LEVERETTE on March 28, 2017 was a Ruger, Model SR9C nine-millimeter caliber semi-automatic pistol, serial number 336-89960.

38. Investigators traced the Ruger pistol, serial number 336-89960, to a recently conducted retail transaction at a FFL in Philadelphia, PA. Buyer #2 purchased the Ruger on March 3, 2017, only twenty-five days prior to the transaction between LEVERETTE and the CI. The retail cost of the Ruger that the CI purchased from LEVERETTE for $1,000 in government funds was $528.35, meaning LEVERETTE made a profit of $471.65.

39. On April 11, 2017, LEVERETTE sent a text message to the CI via cell phone indicating that he had another firearm for sale. Investigators confirmed the text message and that it originated from cell phone number 215-251-8315, the same cell phone number LEVERETTE has used during the course of this investigation.

40. On April 12, 2017, at approximately 1:25 PM, LEVERETTE contacted UC-1 and the CI via cell phone while they were in a vehicle that was fitted with functioning audio and video

recording equipment. LEVERETTE told UC-1 and CI to meet him at 7th Street and Susquehanna Avenue.

41. UC-1 and CI went to 7th Street and Susquehanna Avenue, parked and waited.

42. At approximately 1:29 PM, agents and officers observed LEVERETTE walking north on the 2100 block of N. 7th Street, away from the direction of 2045 N. 7th Street. LEVERETTE was carrying a brown paper bag.

43. At approximately 1:30 PM, LEVERETTE approached the passenger side of the UC vehicle on foot. LEVERETTE got into the front passenger seat carrying the brown paper bag, which he handed to UC-1 who observed that the bag contained a new condition handgun. UC-1 paid LEVERETTE $1,000 in cash (ATF funds) for this handgun. This meeting was successfully captured with an audio and video recording.

44. At approximately 1:40 PM, UC-1 dropped-off LEVERETTE at 7th and Berks Streets. Agents and officers then observed LEVERETTE walking towards the rear of 2045 N. 7th Street.

45. The handgun purchased from LEVERETTE on April 12, 2017 was a Taurus, Model PT111, Millennium G2, nine-millimeter caliber semi-automatic pistol, serial number TKN85906.

46. Investigators traced the Taurus pistol, serial number TKN85906, to a recently conducted retail transaction at a FFL in Philadelphia, PA. A female herein identified as Buyer #3 purchased the Taurus pistol assigned serial number TKN85906, on March 28, 2017, only fourteen days prior to the transaction between LEVERETTE and UC-1. The retail cost of the Taurus that UC-1 purchased from LEVERETTE for $1,000 in government funds was $299.99 plus tax, meaning LEVERETTE made an approximate profit of $680. Investigators also suspect that Buyer #3 is a straw purchaser for LEVERETTE.

47. On April 15, 2017, LEVERETTE sent a text message to the CI via cell phone indicating that he had another firearm for sale. Investigators confirmed the text message and that it originated from cell phone number 215-251-8315, the same cell phone number LEVERETTE has used during the course of this investigation. On this date, UC-1 and the CI made an electronically recorded phone call to LEVERETTE at phone number 215-251-8315 and arranged to meet him on April 17, 2017.

48. On April 17, 2017, at approximately 3:31 PM, agents and officers established surveillance of 2045 N. 7th Street.

49. At approximately 3:41 PM, agents and officers observed LEVERETTE exit 2045 N. 7th Street carrying a white plastic bag.

50. At approximately 3:43 PM, LEVERETTE contacted UC-1 and the CI via cell phone while they were in a vehicle that was fitted with functioning audio and video recording equipment. LEVERETTE told UC-1 and the CI to meet him at 7th Street and Susquehanna Avenue.

51. UC-1 and CI went to 7th Street and Susquehanna Avenue, parked and waited.

52. At approximately 3:46 PM, LEVERETTE approached the passenger side of the UC vehicle on foot. LEVERETTE got into the front passenger seat carrying the white plastic bag, which he handed to UC-1 who observed that the bag contained a new condition handgun. UC-1 paid LEVERETTE $1,000 in cash (ATF funds) for this handgun. While LEVERETTE was in the UC vehicle, he stated that he had a "chopper" that he identified as an "AK", but he was not willing to sell it. I know from experience that the term "chopper" is street slang for a large caliber, high ammunition capacity rifle such as an AK-47 type rifle. I believe that LEVERETTE was referring to an AK type rifle, possibly an AK-47. LEVERETTE also talked about obtaining an additional firearm for sale to UC-1. This meeting was successfully captured with an audio and video recording.

53. At approximately 3:54 PM, UC-1 dropped-off LEVERETTE at 7th and Berks Streets.

54. At approximately 3:58 PM, agents and officers observed LEVERETTE enter 2045 N. 7th Street.

55. The handgun purchased from LEVERETTE on April 17, 2017 was a Smith & Wesson, Model SD9VE, nine-millimeter caliber semi-automatic pistol, serial number FYD0257.

56. Investigators traced the Smith & Wesson pistol, serial number FYD0257, to a recently conducted retail transaction at a FFL in Philadelphia, PA. Buyer #3 purchased the Smith & Wesson pistol assigned serial number FYD0257, on April 13, 2017, only four days prior to the transaction between LEVERETTE and UC-1. The retail cost of the Smith & Wesson that UC-1 purchased from LEVERETTE for $1,000 in government funds was $379.99 plus tax, meaning LEVERETTE made an approximate profit of $600.

57. On May 26, 2017, LEVERETTE called UC-1 via cell phone from phone number 215-251-8315 and indicated that he had another firearm available for sale. UC-1 told LEVERETTE that he would purchase the firearm on Tuesday May 30, 2017.

58. On May 30, 2017, ATF Task Force Officer (TFO) Jose Borrero conducted surveillance of 2045 N. 7th Street, Philadelphia, PA. At approximately 7:34 AM, TFO Borrero observed LEVERETTE exit the front door of the residence.

59. On May 30, 2017, at approximately 1:15 PM, an IDIS/HIDTA officer established surveillance of 2045 N. 7th Street.

60. At approximately 1:30 PM, the CI called LEVERETTE via cell phone while the CI and UC-1 were in the UC vehicle that was fitted with functioning video and audio recording equipment. UC-1 told LEVERETTE that he was in the area. LEVERETTE indicated that he had a firearm ready for sale and that he was about to come outside.

61. At approximately 1:31 PM, an IDIS/HIDTA officer observed LEVERETTE exit 2045 N. 7th Street carrying a black plastic bag. LEVERETTE got into the driver's seat of a silver Nissan Altima carrying the black plastic bag.

62. At approximately 1:32 PM, LEVERETTE called the CI via cell phone in order to ascertain the location of UC-1 and the CI, who told LEVERETTE they were near 7th Street and Susquehanna Avenue. LEVERETTE drove to that location and told UC-1 and the CI to follow him. UC-1 and the CI followed LEVERETTE to 600 W. Dauphin Street, Philadelphia, PA.

63. At approximately 1:34 PM, LEVERETTE got into the front passenger seat of the UC vehicle in possession of the aforementioned black plastic bag. UC-1 observed that the bag contained a small new condition handgun and one box of ammunition. UC-1 paid LEVERETTE $1,000 in cash (ATF funds) for this handgun. While LEVERETTE was in the UC vehicle, he identified the firearm that he was selling as a Ruger .380 semi-automatic that he described as a modern day Saturday night special. In an apparent reference to having test-fired the firearm, LEVERETTE stated that the popped this joint off last night and that he rocked that "jawn" and it rocked good. UC-1 asked LEVERETTE about the "chopper" they had talked about on April 17, 2017. LEVERETTE referred to his "chopper" using the name "Elvira." LEVERETTE said that "Elvira" was his baby and she's got sentimental value. LEVERETTE said that she, referring to "Elvira", has been around since nine-eight. I believe that LEVERETTE was referring to an AK type rifle, possibly an AK-47, currently in his possession, that he has had since 1998, and that he so highly values that he actually named it "Elvira." LEVERETTE also told UC-1 that the next firearm that he puts in UC-1 hands will be a Glock .40 caliber. This meeting was successfully captured with an audio and video recording.

64. The handgun purchased from LEVERETTE on May 30, 2017 was a Taurus, Model TCP PT 738, .380 caliber, semi-automatic pistol, serial number 26379F.

65. Investigators traced the Taurus .380 caliber pistol, serial number 26379F, to a recently conducted retail transaction at a FFL in Philadelphia, PA. Buyer #2 purchased the Taurus .380 caliber pistol assigned serial number FYD0257, on May 26, 2017, only four days before the transaction between LEVERETTE and UC-1. The total retail cost of the Taurus .380 caliber pistol UC-1 purchased from LEVERETTE for $1,000 in government funds was $298.25 plus tax, meaning LEVERETTE made an approximate profit of $701.75.

66. I know from training and experience, and via consultation with ATF Agents specially trained to conduct interstate nexus determinations of firearms, that the firearms identified in this affidavit have previously travelled in interstate or foreign commerce.

67. Based on the information contained in this affidavit, I believe that Quran LEVERETTE is a convicted felon who is not a licensed FFL and prohibited under federal law from possessing firearms that have previously travelled in interstate or foreign commerce. I believe that on the dates specified herein, LEVERETTE illegally possessed firearms and engaged in the business of dealing firearms without a federal firearms license.

68. Based upon the information contained herein there is probable cause to believe that QURAN LEVERETTE has committed violations of Title 18 USC Sections 922(a)(1)(A) and 922(g)(1), that is illegal dealing in firearms and felon in possession of a firearm. I therefore respectfully request the issuance of an arrest warrant for the most recent of these illegal transactions.

Robert J. Wescoe
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Sworn To And Subscribed Before Me
This 8 day Of June, 2017

HON. JACOB P. HART
United States Magistrate Judge